UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YEOTA CHRISTIE,<br><br>               Plaintiff,<br>    v.<br><br>MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS, LLC et al.,<br><br>               Defendants. | Case No. 8:12-cv-01584-ODW(JPRx)<br><br>**ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [15]** |

## I.  INTRODUCTION

Plaintiff Yeota Christie moves ex parte for a temporary restraining order to stay a trustee's sale on her home scheduled for November 2, 2012.  The Court finds this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Upon review, the Court finds that Christie fails to demonstrate the likelihood of success on the merits required for a temporary restraining order.  Accordingly, Christie's request for a temporary restraining order is **DENIED**.

## II.  BACKGROUND

On September 19, 2007, Christie obtained an adjustable-rate home refinance loan from Wells Fargo Bank in the amount of $787,500.00. (Compl. Ex. C.)  This loan was secured by a deed of trust naming Wells Fargo as the lender and beneficiary

and Fidelity National Title Insurance Company as the trustee under the deed of trust. (Compl. Ex. D.)

Christie alleges that on November 13, 2009, she received an unsigned letter from an unidentified person or entity informing her that her loan had been assigned, sold, or transferred to Morgan Stanley Mortgage Capital Holdings, LLC, effective October 14, 2009. (Compl. ¶ 4.)

On July 22, 2010, after falling behind on her mortgage payments, Christie entered into a Loan Modification Agreement with Saxon Mortgage Services Inc., which Christie insists asserted that it was the lender on her loan. (Compl. ¶ 5 & Ex. C.) Christie contends that during the period from July 2010 to February 2012, she paid Saxon $54,481.11 in mortgage payments under the modified terms of her loan. (*See* Compl. ¶ 6.) Christie does not state in her Complaint or her TRO application what her monthly payments were during this period or that she consistently made those payments in full and on time, nor does she contend that the aggregate $54,481.11 in payments that she made during this period were improperly applied to her loan.

On July 5, 2012, a Notice of Default and Election to Sell was recorded, indicating that Christie was in default on her mortgage in the amount of $51,319.25. (Compl. Ex. H.)

On August 17, 2012, the Law Offices of Les Zieve recorded an Assignment of Deed of Trust purporting to transfer Christie's deed of trust from Wells Fargo Bank to FV-1, Inc. in trust for Morgan Stanley. (Compl. Ex. I.)

Christie alleges that by this time, she was "at a loss . . . of whom is [*sic*] the actual lender/creditor, since Mortgage Stanley [*sic*], Saxon and FV-1 all claiming [*sic*] to be the lender." (Appl. 5.) Finding herself "having no other alternative," Christie filed this action in this Court on September 20, 2012. Subsequently, on October 11, 2012, Christie received a Notice of Trustee's sale alerting her that a foreclosure sale would proceed on November 2, 2012.

Christie's Complaint alleges eight claims, styled as follows: (1) declaratory relief under 28 U.S.C. §§ 2201–2202; (2) negligence; (3) negligent infliction of emotional distress; (4) "negligence – unfair debt collection [15 U.S.C. §2605]"; (5) unfair business practices under California's unfair competition law, Cal. Bus. & Prof. Code § 17200; (6) accounting; (7) cancellation of written instrument under California Civil Code section 3412; and (8) quiet title. The crux of Christie's contentions is that it is unclear who owns the note to her home and thus who is entitled to enforce the note through foreclosure.

### III.  LEGAL STANDARD

A temporary restraining order may be issued upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The purpose of such an order is to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974).

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995); *see also Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy and Co., Inc.*, 240 F.3d 832, 839 n. 7 (9th Cir.2001) (standards for issuing a TRO are "substantially identical" to those for issuing a preliminary injunction). A plaintiff seeking a preliminary injunction must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).

The Ninth Circuit employs a "sliding scale" approach to *Winter*'s four-element test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under this approach, a preliminary injunction may issue if the plaintiff raises "serious

questions going to the merits" and demonstrates that "the balance of hardship tips sharply towards the plaintiff's favor," but only so long as the plaintiff *also* demonstrates that irreparable harm is likely—not just possible—and the injunction is in the public interest. *Id.* (internal quotation marks omitted).

Finally, "a preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. Thus, a district court should enter preliminary injunctive relief only "upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.

## IV. DISCUSSION

Having reviewed Christie's Application, the Court does not find that the circumstances or evidence justify the issuance of a temporary restraining order, ex parte or otherwise. In particular, Christie has failed to show that she is likely to succeed on the merits, or that there are even serious questions going to the merits. Christie's Application fails to address the merits of any one particular claim in her Complaint, but the thrust of the argument is that foreclosure upon the property is improper because various assignments of her deed of trust are either invalid or have not been properly recorded, which destroy any party's ability to foreclose on her home. But Christie provides absolutely no evidence to support these contentions. Moreover, even if Christie had produced some evidence, Christie's foreclosure claims are deficient because she does not contend that she has made all of her mortgage payments or allege or show that she can or has tendered the outstanding balance on her loan. Because Christie has failed to demonstrate that there are serious questions going to the merits of her claims, or provide any evidence supporting her claims, the Application must be denied.

Initially, the Court notes that Plaintiff has not alleged tender. California courts have held that a party seeking to quiet title to a property on which he owes a debt must first offer payment in full on that debt. *Ferguson v. Avelo Mortgage LLC*, 195 Cal. App. 4th 1618, 1623, (2011) ("To bring an action to quiet title a plaintiff must allege

he or she has paid any debt owed on the property."); *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010); *Miller v. Provost*, 26 Cal. App. 4th 1703, 1707 (1994). Further, recent California law unequivocally establishes that a Plaintiff seeking to set aside a foreclosure sale must tender the full amount arrearages *before* attacking the sale. *Stebley v. Litton Loan Servicing, LLP*, 202 Cal. App. 4th 522, 526 (2011) ("A full tender must be *made* to set aside a foreclosure sale, based on equitable principles.") Although Christie seeks to enjoin an impending foreclosure sale, rather than set aside a foreclosure sale, her failure to allege tender is nevertheless fatal to her claims seeking to avoid the sale on the same equitable principles. *See Alicea v. GE Money Bank*, No. C 09-00091 SBA, 2009 WL 2136969, at *3 (N.D. Cal. July 16, 2009) ("When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for wrongful foreclosure."). *But see Chan v. Bank of Am., N.A.*, No. SACV 11-2048 DOC (DTBx), 2012 WL 960373, at *4–7 (C.D. Cal. Mar. 19, 2012) (discussing the application of the tender rule when a foreclosure sale is pending and declining to follow *Alicea* "where Plaintiffs have alleged a facially plausible violation of California's foreclosure statutes").

Regarding the substantive assertions in Christie's TRO application, Christie argues first that multiple Defendants have failed to properly record an assignment of her loan and therefore lack the power to conduct the trustee's sale. (Appl. 11.) But California courts have routinely held that a transfer of assignment of a debt does not need to be recorded. *See*, *e.g.*, *Herrera v. Fed. Nat'l Mortg. Assn.*, 205 Cal. App. 4th 1495, 1506 (2012); *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 271–72 (2011). This argument is therefore unlikely to succeed on the merits.

Next, Christie argues that Morgan Stanley and FV-1 lack authority to enforce her deed of trust because Edward G. Olsen (who signed the August 17, 2012 Assignment of Trust transferring the deed of trust from Wells Fargo to FV-1 as trustee

for Morgan Stanley) has a Linked In page indicating he is an Operations Analyst at Wells Fargo, not the Vice President of Loan Documentation as the Assignment represented. According to Christie, "It is clear that Edward G. Olsen's title was changed as to deceive the public, including Ms. Christie, so as to represent that Mr. Olsen had authority to sign the assignment of the 'DOT.' . . . As such, the invalid signature to the assignment of the 'DOT' invalidates the assignment." (Appl. 5.) This line of argument fails for at least two reasons.

First, because Christie has not identified any facts plausibly supporting her theory that the Assignment to FV-1 was fraudulently executed, the Court needs not accept Christie's bare conclusion of fraud. Further, Christie "do[es] not allege that any third party has ever come forward attempting to enforce the debt, making [her] claim yet more implausible." *Bernardi v. JPMorgan Chase Bank, N.A.*, No. C-111-04543 RMW, 2012 WL 33894, at *2 (N.D. Cal. Jan. 6, 2012).

Second, because Christie does not allege that she was a party to the assignment, she lacks standing to challenge its validity. *See Bleavins v. Demarest*, 196 Cal. App. 4th 1533, 1542 (2011) ("Someone who is not a party to a contract has no standing to challenge the performance of the contract . . . ." (internal quotation marks and alterations omitted)); *see also Velasco v. Sec. Nat'l Mortg. Co.*, No. 10-00239 DAE KSC, 2011 WL 4899935, at *4 (D. Haw. Oct. 14, 2011) ("[A]s strangers to the Assignment and without any evidence or reason to believe that they are intended beneficiaries of that contract, Plaintiffs may not dispute the validity of the Assignment."); *Livonia Prop. Holdings, L.L.C. v. 12840–12976 Farmington Road Holdings, LLC*, 717 F. Supp. 2d 724, 737 (E.D. Mich. 2010) (holding that a plaintiff who was not and is not a party to any assignments or Pooling and Servicing Agreement at issue "lacks standing to challenge their validity or the parties' compliance with those contracts").

Christie also appears to contend that various shortcomings in the assignments of her loan have impermissibly separated her note from her deed of trust, and thus "the

defendants are unable to conduct the trustee's sale because they lack the power and right to do so." (Appl. 16.) This argument is meritless, as California law does not require a foreclosing party to hold the note in order to foreclose under the power of sale contained in the deed of trust; it merely requires foreclosing parties to comply with certain statutory procedures. California Civil Code section 2924(a)(1) provides that a "trustee, mortgage or beneficiary or any of their authorized agents" may conduct the foreclosure process. Under California Civil Code section 2924(b)(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." Because Christie does not contend that the party named in the Notice of Trustee's Sale (a party so far unidentified in Christie's pleadings) is not an agent of Wells Fargo, Saxon, Morgan Stanley, or FV-1, Christie does not establish that the foreclosing party does not have the power to conduct a foreclosure sale.

Finally, the overarching theme of Christie's entire Complaint and TRO is that she cannot ascertain who has the authority to conduct the trustee's sale at issue. (*See* Appl. 7 ("This only raises the questions: 'Who is actually the lender?' and 'Who is the proper person to be conducting the trustee's sale?").) Unfortunately for Christie, California's comprehensive framework for the regulation of nonjudicial foreclosure sales in the state, set forth in Civil Code sections 2924 through 2924k, does not "provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized." *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1155 (2011). This is because allowing such suits "would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures." *Id.*

In sum, the Court concludes that Christie has not shown a likelihood of success on the merits of her action. Because Christie has not established a likelihood of success on the merits, the Court does not reach the remaining injunctive-relief factors.

*Cf. Winter*, 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a *possibility* of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." (emphasis added)).

## V. CONCLUSION

Because Christie has not established a likelihood—or even possibility—of success on the merits, the Court is powerless to grant Christie's temporary restraining order and suspend the November 2 trustee's sale. Christie's TRO Application is **DENIED**.

**IT IS SO ORDERED.**

October 30, 2012

_____
**HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**